IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MUHAMMAD BEY, beneficial owner, and 1st lien holder, for MUHAMMAD LAWAL,<br><br>   Plaintiff,<br><br> vs.<br><br>CITIBANK, N.A., EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INC.,<br><br>   Defendants. | Case No. 20 C 5211 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendants Citibank, Experian, and Equifax have moved to dismiss plaintiff Muhammad Bey's amended complaint under Federal Rule of Civil Procedure 12(b)(6). Bey,[1] who is proceeding *pro se*, asserts claims under the Fair Credit Reporting Act (FCRA) (count 1), the Illinois Criminal Code (counts 2 and 3), the Illinois Constitution (counts 5 and 6), and Illinois civil statutes or common law (counts 4, 7, and 8). For the reasons stated below, the Court grants the defendants' motions to dismiss.

### Background

Muhammad Bey is from South Holland, Illinois. Citibank is the consumer

---

[1] The caption of the plaintiff's complaint identifies plaintiff Muhammad Bey as the "beneficial owner" and "1st lien holder" for "MUHAMMAD LAWAL." *See* Am. Compl. ¶ 9 (dkt. no. 23) ("Plaintiff(s) Muhammad Bey, beneficial owner of MUHAMMAD LAWAL is now and at all times relevant to this action a natural person."). The exact relationship between Muhammad Lawal and Muhammad Bey is not entirely clear, but they appear to be the same person. The Court will refer to the plaintiff as Muhammad Bey.

division of the financial services corporation Citigroup.  Equifax and Experian are consumer credit reporting agencies.  Bey initially filed this lawsuit in Illinois state court, naming as defendants persons he claimed were the CEOs of the defendant corporations.  The defendants removed the case to this Court in September 2020 based on federal question jurisdiction and then moved to dismiss Bey's complaint.  The Court granted the motion, ruling that Bey had named improper defendants and instead needed to name the corporate entities in question.  *See* Order on Mot. to Dismiss (dkt. no. 20).

Bey then filed an amended complaint naming only the present corporate defendants.  *See* dkt. no. 23.  He alleges that on or about November 18, 2019 and November 25, 2019, he obtained consumer reports from Equifax and Experian and from these reports "discovered an impermissible inquiry" by Citibank, specifically, obtaining his credit report.  Am. Compl. ¶ 16 ("Plaintiff at this time discovered an impermissible inquiry by first defendant using business name Citi Cards/CitiBank to obtain plaintiff' [sic] consumer credit report on September 4, 2019.").

Bey says he then sent a research request form to Experian to investigate Citibank's inquiry and that he sought "immediate removal of the impermissible inquiry." *Id.* ¶ 22.  Bey contends that on or around February 4, 2020, Citibank responded, stating that it had no record of a credit inquiry that took place based on the information Bey provided; Bey alleges, however, that the credit reports he obtained from Equifax and Experian showed that Citibank had, in fact, requested his information.  *See id.* ¶ 24 ("[Citibank] utilize[d] undue delay tactics by requesting for confidential information like Social Security number, and repetitive information already provided to them.").

Next, Bey contends that Equifax "attempted to obtain further private and repetitive information from plaintiff." *Id.* ¶ 26. He says that all three defendants had his information "within their possession" despite "alleg[ing] they initially did not have [it]." *Id.* ¶ 29. He also suggests that the defendants did not follow "reasonable procedures to assure maximum possible accuracy of the information concerning plaintiff's property's credit report." *Id.* ¶ 31. Bey says that all three defendants had a duty to ascertain if there was a legitimate purpose for Citibank to obtain his credit report, *id.* ¶ 33, and he appears to allege that none of them did so. Bey contends that nine days after the alleged "impermissible credit inquiry" from Citibank, his credit score decreased by four points. *Id.* ¶ 46. The inquiry, Bey contends, "irreparably damaged [him] and [his] property's credit worthiness." *Id.*

Bey contends that the defendants' conduct violated the FCRA, 15 U.S.C. § 1681, Illinois criminal law, various provisions of the Illinois constitution, and other Illinois civil statutes and the common law.

## Discussion

The defendants have moved to dismiss Bey's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On a motion to dismiss for failure to state a claim, the Court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and assesses whether the plaintiff has asserted a plausible basis for relief. *See, e.g., Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A court "give[s] liberal construction to pro se pleadings" like Bey's complaint, but pro se plaintiffs "are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541

F.3d 751, 758 (7th Cir. 2008). Under Federal Rule of Civil Procedure 8(a), a plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Under this standard, a plaintiff who seeks to survive a motion to dismiss must plead some facts that suggest a right to relief that is beyond the speculative level." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotations omitted). "While detailed factual allegations are not necessary to survive a motion to dismiss, it does require more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Id.* (internal quotations omitted).

**A.    FCRA claim (Count 1)**

The FCRA imposes limits upon the circumstances under which a consumer reporting agency may furnish consumer reports to persons or entities other than the consumer. "If an entity requests a report for a purpose not listed in the Act, an injured consumer can recover the 'actual damages' caused by negligent noncompliance . . . or both actual and punitive damages caused by willful noncompliance" with the FCRA. *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046 (7th Cir. 2005); 15 U.S.C. §§ 1681*o*(a)(1), 1681n.

In count 1 of his amended complaint, Bey alleges that Citibank, Equifax, and Experian each violated the FCRA. *See* Am. Compl. ¶¶ 15-48. The first question is exactly what provision(s) of the FCRA he alleges the defendants violated. This is not all that easy to figure out, as Bey's allegations are not all that clear. The Court has done its best, construing Bey's *pro se* pleadings liberally, *Parker v. Four Seasons Hotel, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017), and understands him to allege the following

violations. First, he alleges that Citibank accessed his credit report without a permissible purpose, in violation of 15 U.S.C. § 1681b. *See* Am. Compl. ¶¶ 16, 39-42. Second, Bey appears to contend that Equifax and Experian impermissibly furnished the report to Citibank without taking reasonable steps to ensure that Citibank's request for the report was appropriate. *See id.* ¶¶ 33, 37. And third, Bey appears to allege some form of inaccuracy within the credit reporting agencies' files that they did not properly investigate, which might give rise to a violation of 15 U.S.C. §§ 1681e(b) and/or 1681i. The Court cannot ascertain from the amended complaint, however, exactly what the claimed inaccuracy is. *See id.* ¶¶ 31. As a result of the defendants' actions, Bey says, his credit score decreased by four points. *See id.* ¶ 46. Bey's complaint also does not include facts regarding whether any of the defendants acted negligently, willfully, or knowingly with respect to their FCRA obligations. He also did not respond to any of the defendants' arguments in support of dismissal in his response memorandum. *See generally* Pl.'s Resp. Mem. (dkt. no. 33).

The first question is whether Bey has alleged a violation of the FCRA. He has not done so with respect to his apparent contention that the credit reporting agencies' files contain inaccurate information and that they failed to correct it. Any such claim fails for a very basic reason: Bey has not described in clear and succinct terms whether he is claiming an inaccuracy and, if so, what it is. *See* Fed. R. Civ. P. 8(a)(2) (complaint must include "a short *and plain* statement of the claim").

Next is Bey's allegation that Citibank obtained the report for an improper purpose. The defendants contend, first, that Bey has not alleged that Citibank obtained a "consumer report" as the FCRA defines that term. That's not correct; Bey squarely

alleges in paragraph 16 that Citibank did exactly this. Am. Compl. ¶ 16. If the defendants are contending that Bey cannot show that whatever Equifax and/or TransUnion disclosed to Citibank was *in fact* a credit report, as opposed to something short of that, Bey cannot be expected to be able to know, without discovery, exactly what the credit reporting agencies turned over. In any event, Bey has provided exhibits in which Experian stated that "CITI CARDS CBNA obtained a copy of your EXPERIAN Credit Report," Pl.'s Ex. E, Experian Credit Report at 1 (dkt. no. 13), and that Equifax stated that Citibank had made a "request for your credit history," Pl.'s Ex. E1, Equifax Credit Report at 2 (dkt. no. 14); *see also* Am. Compl. at 46 (Equifax Credit Report labeled as "Exhibit EQ3"). That's good enough for purposes of a Rule 12(b)(6) motion.

The defendants also argue that Bey's reports from Experian and Equifax undercut his allegation that there was no permissible purpose for Citibank's alleged inquiry. They contend that "to the extent Plaintiff applied for a loan or credit, as stated in the [Equifax Credit Report], there was a 'permissible purpose' for the alleged consumer report." Defs.' Opening Mem. at 8 (dkt. no. 30). Indeed, the FCRA allows a person or entity to obtain an individual's consumer report for use in connection with a credit transaction involving the consumer, including an application for credit by the consumer. *See* 15 U.S.C. § 1681b(a)(3)(A).

Bey's materials include the information upon which the defendants base this argument. First, regarding Experian:



Pl.'s Ex. E, Experian Credit Report at 1 (dkt. no. 13). The credit history, which Bey accessed through his account on Experian's website, states that "CITI CARDS CBNA obtained a copy of your EXPERIAN Credit Report" on September 4, 2019. *Id*. Further, it says that "[a] lender has requested a copy of your Credit Report for a bank/credit card. Every time you apply for credit, a hard inquiry is placed on your Credit Report . . . ." *Id*. It also includes a credit alert stating that Bey's credit score decreased by four points. *See id.* (not pictured).

On page 3, the report lists the reason for Citibank's inquiry as "Unspecified" and states that "[t]his inquiry is scheduled to continue on record until Oct 2021":



Id. at 3.

Next is Equifax. Exhibit E1, which Bey attached to his response memorandum as well as his amended complaint, is a credit file from Equifax, also reflecting a September 4, 2019 inquiry from "CBNA," an abbreviation for Citibank.

Pl.'s Ex. E1, Equifax Credit Report at 2 (dkt. no. 14); see also Am. Compl. at 46 (Equifax Credit Report labeled as "Exhibit EQ3"). The Equifax report states that "[a] request for your credit history is called an inquiry. There are two types of inquiries – those that may impact your credit rating/score and those that do not." Equifax Credit Report at 2.

Directly above the Citibank inquiry, the credit report states that what it is listing "are inquiries made by companies to whom you have applied for a loan or credit." *Id.*

In short, both Experian's and Equifax's files appear to be saying that Citibank had asked for Bey's consumer report because he had applied for credit. The problem, at least for purposes of a Rule 12(b)(6) motion, is that Bey alleges otherwise. Specifically, Bey squarely alleges in his amended complaint that he did not apply for credit with Citibank. *See* Am. Compl. ¶ 42. It is true that he has provided the Court with documents that indicate otherwise, but by providing Experian's and Equifax's statements Bey has not adopted their accuracy (particularly in view of his unequivocal allegation to the contrary), and in any event the two agencies presumably would have known only what Citibank told them, not whether Bey had *actually* applied for or already had a credit account with Citibank. The Court therefore overrules the defendants' argument that Bey has failed to adequately allege that Citibank obtained his consumer report for an impermissible purpose.

Bey has not, however, provided any allegations that would plausibly indicate that Equifax or Experian violated the FCRA by furnishing his report to Citibank upon its inquiry. Under the FCRA, a credit reporting agency may furnish a consumer report to "a person which it has reason to believe" intends to use it for a "permissible purpose." 15 U.S.C. § 1681b(3). Another provision of the FCRA requires credit reporting agencies to "maintain reasonable procedures" to ensure that reports are disclosed only for permissible purposes, including requiring a user to identify itself and certify that a report is sought only for permissible purposes, and to make "reasonable efforts" to verify a prospective user's identity and claim uses before furnishing a report. *Id.* § 1681e(a).

Bey alleges nothing about this at all in his amended complaint. For this reason, the amended complaint does not state a claim against Experian or Equifax in connection with the furnishing of Bey's consumer report to Citibank.

With regard to Citibank, though Bey has sufficiently alleged that it sought and obtained his consumer report for an impermissible purpose, he has not sufficiently alleged any basis for relief from Citibank. Specifically, Bey has made no factual allegations that would plausibly indicate that Citibank acted knowingly or willfully in obtaining his report for an impermissible purpose. A negligent violation would not suffice. Under 15 U.S.C. § 1681o, proof of a negligent violation of the FCRA allows recovery of actual damages and attorney's fees, but Bey has alleged neither. He is acting *pro se* and does not allege that he has incurred any attorney's fees in connection with this case, and his allegation that his credit score dropped four points—the only indication of any harm in his amended complaint—does not amount to actual damages recoverable under section 1681o. *See, e.g.*, *Young v. Harbor Motor Works, Inc.*, No. 2:07 C 31, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009) ("[Plaintiff] has not alleged any actual damages that he suffered as a consumer flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit"); *see also Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011); *Reeder v. HSBC USA, Inc.*, No. 9 C 2043, 2009 WL 4788488, at *13 (N.D. Ill. Dec. 8, 2009). Under the FCRA, if a person obtains a consumer report "knowingly without a permissible purpose" violates the FCRA, the consumer may recover statutory damages even in the absence of actual damages. 15 U.S.C. § 1681n(b). The same is true for

willful violations, which also give rise to potential liability for punitive damages. 15 U.S.C. § 1681n(a). But Bey has offered no factual allegations that would plausibly suggest Citibank (or, for that matter, Equifax or Experian) acted knowingly, let alone willfully.

For these reasons, the Court dismisses Bey's FCRA claim for failure to state a claim upon which relief may be granted. Unless Bey files, by May 28, 2021, a motion for leave to amend including an amended complaint that plausibly states an FCRA claim against one or more of the defendants, the Court will enter judgment against him.

**B.     Remaining claims**

   **1.     Claims under the Illinois Criminal Code**

Bey asserts two claims based on provisions of the Illinois Criminal Code. In count 2, Bey appears to assert a "simulation of legal process" claim. *See* 720 Ill. Comp. Stat. 5/32-7. In count 3, he argues that the defendants committed identity theft. *See* 720 Ill. Comp. Stat. 5/16-30. As the defendants argue, "[i]t is well established that a private litigant . . . lacks a private right of action to attempt to enforce the Illinois criminal code." Defs.' Opening Mem. at 11; *see Dixon v. McGuire*, 2014 IL App (3d) 120727-U, ¶ 7 ("The [Illinois] Criminal Code creates no civil cause of action for a violation of its provisions."). The Court dismisses counts 2 and 3 with prejudice.

   **2.     Claims under the Illinois Constitution**

Bey also alleges that the defendants violated the Illinois Constitution. In count 5, he alleges that the defendants caused "undue hardship and undue delay of remedy for injuries done to properties and effects." Am. Compl. at 6. In count 6, Bey contends that the defendants violated his right to privacy. The defendants are correct that "there is no

private right of action to bring a claim for damages under the Illinois Constitution absent an express 'self-executing' constitution[al] provision granting a right of action." Defs.' Opening Mem. at 11. The Illinois constitution cannot be the basis of a lawsuit unless there is self-executing language indicating that a private right of action exists. *See Teverbaugh ex rel. Duncan v. Moore*, 311 Ill. App. 3d 1, 4-5, 724 N.E.2d 225, 228-229 (2000). Bey's claims do not satisfy this requirement. The Court therefore dismisses these claims with prejudice.

### 3. Remaining claims

In count 4, Bey contends that the defendants' actions "constitute unjust enrichment" and suggests that the defendants are "gaining monies from obtaining and utilizing and reporting plaintiff's information." Am. Compl. ¶ 59. To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quotations omitted). Bey's complaint does not include any facts plausibly indicating that the defendants are "unfairly possessing [something] to the plaintiff's detriment," *see id.*; he identifies no "detriment" other than a four-point credit score reduction that is not accompanied by any claim of tangible harm. The Court dismisses count 4 with prejudice.

In count 7, Bey contends that the defendants made false representations and engaged in unfair, misleading, and deceptive business practices. Though unclear, it is possible that this claim is based on the Illinois Consumer Fraud and Deceptive Business

Practices Act (ICFA). To state a viable claim under the ICFA, a plaintiff must plausibly allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Count 7 does not include any factual content indicating that the defendants engaged in conduct that was deceptive or unfair or that they intended for Bey to rely on their actions or statements for any reason. Because Bey has not alleged facts that could make an ICFA claim plausible, the Court dismissed Count 7 with prejudice.

In count 8, Bey asserts a "loss of consortium" claim. Am. Compl. ¶¶ 66-67. Under Illinois law, loss of consortium claims concern damages sought by an injured or deceased person's spouse. "Consortium includes society, guidance, companionship, felicity, and sexual relations. It is unique to a marriage partner." *McClain v. Owens-Corning Fiberglas Corp.*, 139 F.3d 1124, 1129 (7th Cir. 1998). But there is no second plaintiff in the case claiming loss of consortium vis-à-vis Bey, and he does not allege any conduct directed at his spouse that has caused him a loss of consortium. The Court therefore dismisses count 8 of the amended complaint with prejudice.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion to dismiss [dkt. no. 29] and dismisses Bey's amended complaint for failure to state a claim. As to counts 2 through 8, the dismissal is with prejudice. As to count 1, as stated earlier, unless Bey files, by May 28, 2021, a motion for leave to amend that includes a proposed amended complaint that states a viable FCRA claim against one or more of

the defendants, the Court will enter judgment against him. The case is set for a telephonic status hearing on June 8, 2021 at 9:15 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 10, 2021